THE NATIONAL SHAWMUT BANK OF BOSTON *vs.* BERNARD GOLDFINE.

Suffolk.     November 8, 1940. — January 28, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Contract,* Consideration, Construction.    *Guaranty.*

A promise in a letter to a bank that the signer would "see that" the bank would "suffer no loss as a result" of a foreclosure of a mortgage pledged by a mortgagee to the bank to secure payment of a debt of a person other than the signer of the letter and the pledgor, properly was found to be supported by a valuable consideration on evidence that the purpose and result of the promise was to induce the bank not to take steps to force payment by the debtor, although the motive of the signer was to benefit an officer of the bank who sought and procured the letter, rather than the debtor or the pledgor.

One who for a valuable consideration promised in writing to "see that" a pledgee of a second mortgage would "suffer no loss as a result" of being "compelled to foreclose" it, became liable thereon when, upon a sale in foreclosure of the first mortgage, less than the debt secured thereby was realized.

CONTRACT. Writ in the Municipal Court of the City of Boston dated May 10, 1935.

Upon removal to the Superior Court, the case was heard by *Donnelly,* J.

A request by the defendant for a ruling numbered 9 was as follows: "As a matter of law, if it is found that there was a contract of guaranty as alleged, the defendant is not liable if the plaintiff after default by the principal debtor unreasonably fails to foreclose the mortgage given as security." The judge refused this request, stating that he did so since "I find as a fact that the plaintiff did not

unreasonably fail to foreclose the mortgage given as security ,by the principal debtor." A request numbered 10 was as follows: "As a matter of law, the inaction on the part of the plaintiff to foreclose the mortgage given as security by the principal debtor, resulting in a loss of the security and/or its value, discharges the defendant from any liability." As to this request, the judge stated: "Since I find as a fact that the failure of the plaintiff sooner to foreclose the mortgage given as security was at the request of the principal debtor, concurred in by the defendant, and was a part of the consideration for the guaranty here in suit, this request has no application. I further find that there was no value in the security above the first mortgage on the property described in the mortgage given as security and that the defendant, therefore, was not harmed by the failure of the plaintiff to foreclose."

*T. H. Mahony*, for the defendant, submitted a brief.

*D. E. Hall*, for the plaintiff.

LUMMUS, J.   This is an action upon a promise contained in a letter given by the defendant to the plaintiff on October 7, 1929, relating to a mortgage held by the plaintiff as collateral security. There was a finding for the plaintiff by a judge sitting without jury, with damages assessed at $39,691.25. The case is here on the defendant's exceptions.

Uncontradicted testimony showed the following facts. On July 28, 1927, Homestead Motor Car Company gave to Charlestown Five Cents Savings Bank a first mortgage for $75,000 upon its garage property at 215 Humboldt Avenue in Roxbury. On July 16, 1928, Myer Goldblatt, then the owner of record, gave to Joseph A. Levin a second mortgage for $75,000 upon the same property, the principal being payable $500 monthly and the whole in one year from the date of the mortgage. The second mortgage note was indorsed, and the mortgage was assigned, by Levin to the plaintiff on July 16, 1928, and both were delivered to the plaintiff. On the next day, July 17, 1928, Homestead Motor Car Company gave a demand note to the plaintiff for $50,000, and the second mortgage

note and mortgage were described as pledged as collateral security for the demand note.

On October 7, 1929, Homestead Motor Car Company owed the plaintiff $43,000 on the demand note for $50,000, besides the whole principal of an earlier note for $15,000, dated July 29, 1927. On October 7, 1929, the defendant signed and delivered to the plaintiff a letter addressed to the plaintiff. The body of the letter read: "In the event that you are at any time compelled to foreclose the second mortgage given by Myer Goldblatt to Joseph A. Levin dated July 16, 1928 for $75,000 which mortgage covers the premises numbered 215 Humboldt Avenue, Roxbury, Massachusetts, which has been assigned to you as collateral security for two demand notes of the Homestead Motor Car Company, the first of said notes being dated August 21, 1927 [July 29, 1927?] for $15,000 and the second of said notes being dated July 17, 1928, originally for $50,000 and now reduced to $43,000, I will see that you suffer no loss as a result thereof." But we do not find elsewhere in the record any evidence that the second mortgage was pledged to secure the note for $15,000.

The first question is whether there is evidence of consideration for the promise contained in the letter. No consideration was stated. The defendant was not financially interested in the property, the parties, or the transactions that had previously taken place. But Levin was his brother-in-law. The plaintiff advanced no money in reliance upon the promise, for all had been advanced long before. The occasion for the letter was that one Billman, an officer of the plaintiff, who had negotiated the loans in question, was under criticism from his superior, one Augustine, because of the loans. Billman, who was friendly with the defendant, told him that if he would give a letter of approval of the loans, the pressure upon Billman would be eased and the plaintiff would not compel Billman to require payment of the loans and get them out of the bank. A letter of approval was drawn, but it was not satisfactory to Augustine. After further importunity from Billman, the defendant gave him the letter of October 7, 1929.

If, as the defendant contends, Billman promised that the defendant would not be held liable according to the terms of the letter, such a promise was legally of no consequence. *Quincy Trust Co.* v. *Woodbury*, 299 Mass. 565, 567. *Lamson & Co. (Inc.)* v. *Abrams*, 305 Mass. 238, 243–244. The letter was given for the purpose, and had the intended effect, of inducing the plaintiff not to take steps to force Homestead Motor Car Company to repay the loan. Even though the motive of the defendant in inducing the plaintiff to forego such steps was to benefit Billman rather than Levin or Homestead Motor Car Company, a valuable consideration for the promise contained in the letter could be found. Of course the plaintiff did not undertake to wait forever or for any definite time. But that did not prevent a finding of consideration. *Merchants Discount Co.* v. *Federal Street Corp.* 300 Mass. 167, 169, and cases cited.

The next question is whether the promise contained in the letter was broken. The promise was conditioned upon a foreclosure by the plaintiff of the second mortgage of $75,000 upon the garage property. It was intended to assure the sufficiency of that mortgage as collateral security for the benefit of the plaintiff. What happened was that on March 3, 1933, Charlestown Five Cents Savings Bank held a foreclosure sale under the power of sale contained in its first mortgage for $75,000, bid the garage property in for $40,000, and later gave to itself a foreclosure deed accordingly on March 8, 1933. By that foreclosure the second mortgage held by the plaintiff as collateral security was made worthless and in fact extinguished. Was the plaintiff "compelled to foreclose the second mortgage" within the words of the promise contained in the letter? The foreclosure of the first mortgage constituted a compulsory liquidation of the garage property and incidentally of the second mortgage, and had all the effect that a foreclosure of the second mortgage could have. As the trial judge said, foreclosure of the second mortgage would have been "an empty gesture, of no value to the defendant." In our opinion the condition of the promise came to pass in

substance. It is not questioned that in the liquidation the plaintiff suffered a loss to the amount of the finding for the plaintiff.

The defendant contends that without his consent monthly payments from Homestead Motor Car Company on its notes to the plaintiff were reduced from $500 to $250 in May, 1931. The judge found that the defendant consented. Besides, by a letter from Homestead Motor Car Company to an officer of the plaintiff, dated May 12, 1931, it appears that by agreement with the plaintiff merely "the monthly charge against our bank balance will from now on be $250.00 instead of $500.00." Both notes in question were due on demand, the second mortgage note was overdue, and there is no evidence of any binding extension. Nothing discharging the defendant from liability appears.

The defendant contends that his promise was to continue only a reasonable time in view of all the circumstances, and that unreasonable delay in collecting the notes or in realizing on the security would discharge the defendant. It may be assumed, without deciding, that this is so, although the promise was to take effect if the plaintiff should be compelled to foreclose "at any time." *Oxford Bank* v. *Haynes*, 8 Pick. 423. *Thomas* v. *Davis*, 14 Pick. 353. *Talbot* v. *Gay*, 18 Pick. 534. *Whiton* v. *Mears*, 11 Met. 563. *Parkman* v. *Brewster*, 15 Gray, 271. *Rotch* v. *French*, 176 Mass. 1. *Zeo* v. *Loomis*, 246 Mass. 366, 368. *Maksymiuk* v. *Puceta*, 279 Mass. 346, 356. *Agricultural National Bank of Pittsfield* v. *Brennan*, 295 Mass. 325, 329. But it could not be ruled as matter of law that more than a reasonable time had elapsed after the promise, or that the plaintiff had delayed unreasonably.

What has been said covers many of the defendant's requests for rulings of law. Some of them are disposed of by special findings of the judge. They require no further discussion. One of them raises the unimportant question whether the promise contained in the letter is properly classified as a guaranty. See *Howell* v. *Commissioner of Internal Revenue*, 69 Fed. (2d) 447, 450.

*Exceptions overruled.*